**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ROY JACK WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALLSTATE FIRE AND CASUALTY )<br>INSURANCE COMPANY, )<br>)<br>Defendant. ) | Case No. CIV-13-828-D<br>Judge Timothy D DeGiusti |

**COMPLAINT**

COMES NOW Plaintiff Roy Jack Williams and, for his causes of action against Defendant Allstate Fire and Casualty Insurance Company, alleges and states as follows:

**VENUE AND JURISDICTION**

1. Plaintiff Roy Jack Williams is, and was all times relevant herein, a citizen of the State of Oklahoma and a resident of Oklahoma County, Oklahoma.

2. Defendant Allstate Fire and Casualty Insurance Company is a company organized under the laws of the State of Illinois with its headquarters and principal place of business in the State of Illinois that is licensed to and does engage in the business of insurance in the State of Oklahoma.

3. Defendant is a part of the Allstate group of companies. Defendant will, hereinafter, be referred to as "Allstate."

4. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand ($75,000.00) and there is complete diversity of citizenship between the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claim occurred in this District.

## BACKGROUND FACTS

6. Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-5 above.

7. On January 8, 2011, Plaintiff suffered bodily injury as a result of an automobile accident that occurred in Tarrant County, Texas ("the Accident") while he was a passenger in a vehicle driven by Bruce Stout, ("Stout") due to the negligent acts or omissions of Greer A. Caron.

8. On the date of the Accident, Stout was insured by Allstate under policy number 9 45 030458 03/24, ("Stout's policy"). Stout's policy did not provide Uninsured/Underinsured Motorist, ("UM"), or Medical Payments, ("med-pay"), coverage benefits.

9. On the date of the Accident, Plaintiff was insured by Allstate under policy number 9 45 620607 07/27, ("the Policy" or "Plaintiff's policy"), which did not contain UM but did provide med-pay coverage benefits—up to $25,000.00.

10. Pursuant to med-pay provision of the Policy, Allstate was required to pay to or on behalf of Plaintiff "all reasonable expenses actually incurred" for "necessary medical treatment, medical services or medical products" incurred within five (5) years of the date of the accident when "bodily injury" was "caused by a motor vehicle accident."

11. Allstate was promptly notified of the Accident and advised of the fact that Plaintiff had been injured. However, Allstate did not immediately advise Plaintiff of the potential for coverage benefits.

12. Plaintiff later retained an attorney to represent him with regard to the Accident.

13. In September of 2011, Plaintiff's attorney sent letters to Allstate advising it of his representation of Plaintiff and the fact that Plaintiff had been injured in an automobile accident that was not his fault. Plaintiff's attorney requested copies of the policies issued to Plaintiff and Stout and information about all potentially available coverage benefits under either/both policies.

14. On September 11, 2011, Allstate acknowledged a claim for med-pay benefits by Plaintiff under the Policy and created Claim No. 0217611318 2PB, ("the Claim").

15. On September 19, 2011, Allstate advised Plaintiff's attorney that no coverage benefits were available to Plaintiff under Stout's policy, including med-pay benefits.

16. Per Allstate's request, Plaintiff executed a "Notice of Injury – Proof of Loss" and a Medical Authorization in favor of Allstate so that Allstate could obtain the necessary information to make payment on the Claim pursuant to the med-pay provision of the Policy. Plaintiff's attorney forwarded this to Allstate on or about January 4, 2012.

17. Additionally, Plaintiff and/or his attorney submitted copies of the medical bills and records related to his treatment for injuries sustained in the Accident to Allstate for payment pursuant to the med-pay provision of the Policy.

18. Allstate had in its possession everything that it needed to make full payment on the Claim by October 26, 2012.

19. As a result of the injuries he sustained in the Accident, Plaintiff has already incurred over fifty thousand dollars ($50,000.00) in medical bills and requires further treatment, which will result in further charges. Said bills are reasonable and necessary.

20. Rather than issue prompt payment on the Claim as required by the terms of the Policy and Allstate's duty to deal fairly and in good faith with Plaintiff, Allstate has unreasonably delayed and refused to pay the Claim.

21. In November of 2012, Allstate denied med-pay benefits to Plaintiff, claiming that Plaintiff must undergo a medical examination by a doctor of Allstate's choosing so that Allstate could determine whether Plaintiff's injuries were caused by the accident and/or whether the medical treatment Plaintiff underwent was necessary.

22. The med-pay provision of the Policy does not require the insured to submit to a medical examination by a doctor of Allstate's choosing. Nevertheless, Plaintiff agreed to undergo the examination by Allstate's doctor, Dr. Emily Friedman, if his attorney was also present and the exam was videotaped.

23. Despite the fact that Plaintiff is entitled to have his attorney present and the exam videotaped, Allstate's doctor refused to conduct the exam under these conditions. Allstate then claimed it was unable to find another doctor within a two hundred (200) mile radius of Plaintiff's home who was willing to perform the exam under these conditions.

24.     Allstate's insistence on a medical examination by its doctor was simply a ruse to delay or deny payment of med-pay benefits that were reasonably apparent to be due and owing to Plaintiff.

25.     When Allstate was unable to force Plaintiff to undergo an examination by its doctor, it then submitted his records to another doctor of its choosing, Dr. Charles Lancelotta, Jr., a [speciality] in [state] for a "Independent Peer Review."

26.     Based on its interpretation of Dr. Lancelotta's report, Allstate determined that Plaintiff had over-treated and/or that his injuries should have resolved within three (3) to four (4) months and, therefore, Allstate was "unable to relate treatment received after 2011 to the MVA."

27.     Although Allstate could easily determine for itself that there was no coverage available to Plaintiff under Stout's policy, and in fact, had already confirmed this fact, Plaintiff's attorney provided Allstate with a copy of its letter stating this to the adjuster handling the Claim on November 20, 2012.  Nevertheless, even as late as May 3, 2013, Allstate insisted that the coverage under the Policy is "excess" and that it cannot pay the Claim until it receives proof that 'primary' coverage has been exhausted.

28.     To date, Allstate has not made any payment on the Claim.

29.     Several of the medical providers who provided treatment to Plaintiff for the injuries he sustained in the Accident have filed liens against Plaintiff.

**COUNT ONE – BREACH OF CONTRACT**

30.     Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-29 above.

31. Allstate has breached the insurance contract with Plaintiff by failing and refusing to pay the Claim.

32. As a direct and proximate result of Allstate's breach of the insurance contract, Plaintiff has suffered actual damages in the amount of twenty-five thousand dollars ($25,000.00) as well as consequential damages, which Plaintiff continues to incur due to Allstate's continued refusal to pay the Claim.

33. Plaintiff is entitled to judgment in his favor against Allstate for damages, interest, attorney fees pursuant to 36 O.S. §§ 1219 and/or 3629, and such other relief as the Court deems just and equitable.

## COUNT TWO – INSURANCE BAD FAITH

34. Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-33 above.

35. Allstate has failed to deal fairly and in good faith with Plaintiff as evidenced by, *inter alia*, the actions described in paragraphs 20-28 above.

36. As a direct and proximate result of Allstate's breach of the duty of good faith and fair dealing, Plaintiff has suffered damages in excess of seventy-five thousand dollars ($75,000.00).

37. Allstate recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and in good faith with Plaintiff.

38. Allstate's conduct in delaying or denying payment for reasonable and necessary medical treatment was life threatening to humans.

39. Punitive damages should be awarded against Allstate to punish it and deter others.

40. Plaintiff is entitled to judgment in his favor against Allstate for damages, punitive damages, interest, attorney fees pursuant to 36 O.S. §§ 1219 and/or 3629, and such other relief as the Court deems just and equitable.

WHEREFORE, Plaintiff prays for judgment in his favor against Allstate.

Respectfully Submitted,

/s/ Carin L. Marcussen
Simone Gosnell Fulmer, OBA # 17037
Carin L. Marcussen, OBA # 19869
WHITTEN BURRAGE
1215 Classen Dr.
Oklahoma City, OK 73103
Telephone:  (405) 516-7800
Facsimile:   (405) 516-7859

ATTORNEY FOR PLAINTIFFS

**ATTORNEY LIEN CLAIMED!**
**JURY TRIAL DEMANDED!**