IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| ROY JACK WILLIAMS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-13-828-D |
|  | ) |  |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**O R D E R**

Before the Court is Defendant Allstate Fire and Casualty Insurance Company's Motion for Summary Judgment [Doc. No. 62], filed pursuant to Fed. R. Civ. P. 56. After a substantial period of time for discovery and after the resolution of multiple, protracted discovery disputes, Plaintiff Roy Jack Williams has responded in opposition to the Motion. Following Defendant's reply, the Motion is fully briefed and ripe for decision.

**Factual and Procedural Background**

Plaintiff brings this diversity action asserting claims under Oklahoma law for breach of an insurance contract and breach of the insurer's duty of good faith and fair dealing. The case concerns medical payments ("med-pay") coverage of $25,000 that Plaintiff was entitled to receive under his automobile insurance policy with Defendant. Plaintiff was injured in January 2011 while riding as a passenger in a vehicle involved in a two-car collision in Texas. The accident was allegedly caused by the negligence of the other vehicle's driver, and resulted in litigation in that state. Plaintiff claims Defendant unreasonably delayed

payment and then imposed unreasonable demands, such as requesting an independent medical examination, requiring peer review of his medical records, and demanding proof that other insurance coverage had been exhausted, even though there was no other coverage. Defendant contends the delay was caused by Plaintiff's personal injury lawyer, Ryan Cunningham, who instructed Defendant not to contact medical providers and not to issue any payment until requested by his firm. Mr. Cunningham sent copies of Plaintiff's medical records and bills to Defendant and requested an evaluation of the med-pay claim in October 2012. When the claim remained unpaid, this action was filed in August 2013. Defendant paid Plaintiff the full amount of his med-pay claim in September 2013.

Defendant seeks summary judgment in its favor on all claims.[1] Defendant contends the undisputed facts establish Plaintiff is not entitled to any relief because his insurance claim was handled in the manner expressly directed and agreed to by his attorney, and Defendant's delay in payment was not the cause of any damage to Plaintiff's creditworthiness as a result of unpaid medical bills, as alleged. Defendant asserts that, at the least, it is entitled to summary judgment on the issue of Plaintiff's damages for economic loss. Plaintiff denies that all relevant facts are undisputed or that summary judgment is proper on any issue. Regarding damages, Plaintiff affirmatively states that he does not seek to recover for an

---

[1] Defendant addresses the breach of contract claim only by including an introductory statement that "Allstate paid its auto medical payment coverage to Roy Williams in full with interest over a year and a half ago." *See* Def.'s Mot. Summ. J. [Doc. No. 62], p.5. Defendant then devotes the remainder of its Motion and briefs to a discussion of Plaintiff's proof of liability and damages on his bad faith claim. Plaintiff similarly addresses only the bad faith claim in his briefs. Therefore, like the parties, the Court assumes that no controversy now exists regarding Plaintiff's breach of contract claim.

economic loss; he contends his injury is the emotional distress resulting from unpaid medical bills and a negative credit report.

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may

3

consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[2]

On January 8, 2011, Plaintiff was injured in a motor vehicle accident in Tarrant County, Texas, while riding as a passenger in an automobile owned and driven by Bruce Stout. Mr. Stout's vehicle was rear-ended by another vehicle driven by an allegedly negligent driver. Mr. Stout and Plaintiff were insured under separate policies issued by Defendant. Mr. Stout's policy did not include uninsured motorist or med-pay coverage. Plaintiff's policy provided med-pay coverage up to a limit of $25,000.

By letter dated September 2, 2011, Defendant was first contacted by an attorney representing Plaintiff for a personal injury claim, Ryan Cunningham, who requested information about the insurance coverages available under Mr. Stout's policy. Mr. Cunningham sent a second letter dated September 7, 2011, requesting a copy of Plaintiff's policy. In the letter, Mr. Cunningham stated, in relevant part, as follows:[3]

---

[2] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by Rule 56(c). Notably, Plaintiff's response to Defendant's Motion begins with his own nine-page statement of facts, and he opposes Defendant's stated facts with additional narrative. This format is largely an effort by counsel to present argument, and is not helpful to the Court.

[3] The two letters are identical except for the date, the insured's name, and the policy number. *See* Pl.'s Resp. Br., Exs. 1 & 3 [Doc. Nos. 116-1 & 116-3). In the second letter, Plaintiff is identified as "Your Insured."

> Your insured hereby requests that disclosure concerning their insurance coverage be made to no one other than their attorney.
>
> Please do not issue payment under any portion of your insured's policy, in whole or in part, to anyone prior to a request from our firm. Please do not place any names other than your insured and Cunningham & Mears on any payment issued on behalf of any insured. Mail all checks directly to our offices and do not issue medical payments directly to medical providers. If you have any questions concerning the timing or manner in which your insured wishes payment under their policy to be issued by your company, please contact our firm.

*See* Def.'s Mot. Summ. J., Ex. 4 [Doc. No. 62-4].[4] The receipt of the letter resulted in an entry in Defendant's claim record dated September 9, 2011, that included the following statement: "ATTRY REQUEST NO PAYMENTS BE MADE UNDER ANY COVERAGE UNDER INSD POLICY." *See id*. Ex. 5 [Doc. No. 62-5], p.1 (ECF page numbering). By letter dated September 19, 2011, Defendant informed Mr. Cunningham that Mr. Stout had rejected uninsured motorist coverage and had no med-pay coverage.

In November, 2011, the adjuster, Dana Colvin, was advised by Mr. Cunningham's firm that copies of Plaintiff's medical records and bills would be provided when he had completed treatment for his injuries. Also, an entry was made in the claim record noting that Plaintiff was a passenger in a "non owned vehicle" at the time of the accident so his med-pay claim was an "excess coverage claim." *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 116-5], p.2 (ECF page numbering). The policy provided: "When [med-pay] coverage applies to a . . . non-

---

[4] Plaintiff states that a copy of the police report regarding the accident was enclosed with the September 7 letter. However, the letter bears no notation indicating there was an enclosure, nor does a copy of the report appear in the summary judgment record.

owned auto, [Defendant] will pay only after all other collectible auto medical insurance has been exhausted." *See* Def.'s Reply Br., Ex. 3, [Doc. No. 120-3], p.4 (ECF page numbering).[5]

On January 4, 2012, Mr. Cunningham submitted to Defendant the executed forms required by the policy (a "Notice of Injury- Proof of Loss" form and medical authorization forms), without completing the parts of the forms that would have identified treatment providers. *See* Pl.'s Resp. Br., Ex. 6 [Doc. No. 116-6], pp.3-4,6,8. No medical bills were provided at that time.[6]

By correspondence dated October 17, 2012, Mr. Cunningham provided a "complete set of [Plaintiff's] medical records and bills" for his med-pay claim. *See* Pl.'s Resp. Br., Ex. 7 [Doc. No. 116-7]. Mr. Cunningham asked Ms. Colvin to review the documents and contact him with her evaluation. Mr. Cunningham repeated in this letter his prior instruction "not to issue medical payments directly to medical providers" but to "[m]ail all checks directly to our offices." *Id*. Ms. Colvin responded by letter dated November 7, 2012, requesting an independent medical examination ("IME"), and advising Mr. Cunningham that an IME vendor would contact him to schedule the exam. Also, at Ms. Colvin's request, Mr. Cunningham's firm faxed to her on November 20, 2012, a copy of the "exhaustion

---

[5] While Plaintiff disagrees with Defendant's application of this provision to characterize Plaintiff's claim as "excess," Plaintiff presents no facts to suggest this reading of the policy was unreasonable or made in bad faith. At the time, Mr. Cunningham did not disagree with this interpretation.

[6] Plaintiff states that a list of medical providers was submitted with these forms, but none appears in the referenced exhibit. *See* Pl.'s Resp. Br. [Doc. No. 116], p.13 ¶ 5; Ex. 6 [Doc. No. 116-6].

letter," that is, Defendant's letter stating there was no coverage under Mr. Stout's policy. *See* Pl.'s Resp. Br. [Doc. No. 115], p.7 ¶ 19; Ex. 15 [Doc. No. 116-15], p.1.

After the IME was scheduled, Mr. Cunningham advised Ms. Colvin by letter dated December 28, 2012, that Plaintiff would attend only if his attorney could accompany him and videotape the examination. The scheduled exam was cancelled. In February 2013, Mr. Cunningham inquired of Ms. Colvin about the status of the claim. He received a response from a different adjuster, Denise Nichols, explaining that the vendor had been unable to locate a physician who would agree to Plaintiff's terms, and proposing a peer review of his medical records as an alternative.[7] By letter dated March 26, 2013, Ms. Nichols confirmed that Defendant would request a peer review of Plaintiff's medical records.

Charles J. Lancelotta, Jr., M.D., reviewed the records submitted to him and provided a written report dated March 29, 2013. Plaintiff views the report as favorable to him because Dr. Lancelotta found "nothing in the medical records . . . to suggest any preexisting conditions or prior injuries." *See* Pl.'s Resp. Br., Ex. 12 [Doc. No. 116-12], p.6.[8] The report also stated, however, that Plaintiff's injuries as a result of the accident were "primarily muscular strains involving the cervical, thoracic and lumbar region." *Id*. p.4. Dr. Lancelotta noted "a lapse of treatment between September, 2011 . . . and . . . June 28, 2012," and no indication "what was happening during that time." *Id*., p.5. By letter dated May 3, 2013,

---

[7] Ms. Colvin stopped working for Defendant in January 2013 for personal reasons.

[8] Ms. Colvin has testified that she requested an IME, in part, because Plaintiff had "a prior surgery the year before." *See* Colvin Dep. 135:16-136:3.

7

Ms. Nichols informed Mr. Cunningham that the report indicated only soft tissue injuries, and without additional documentation, "we are unable to relate treatment received after 2011 to the [motor vehicle accident]." *See* Pl.'s Resp. Br., Ex. 13 [Doc. No. 116-13]. Ms. Nichols also stated that Defendant's policy was "excess insurance in this case" and requested "a copy of the exhaustion letter and ledger from the primary insurance company." *Id*.

Mr. Cunningham discussed Plaintiff's claim with Ms. Nichols by telephone on May 6, 2013. According to a notation in the claim record, Mr. Cunningham told Ms. Nichols the vehicle Plaintiff was riding in "was also insured by [Defendant] and had no coverage," and she told him a "copy of that letter will need to be faxed to me for review." *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 116-5], p.6 (ECF numbering). Mr. Cunningham recorded this telephone conversation. A transcript of the recording confirms that Mr. Cunningham said he would fax the letter to Ms. Nichols, and she said when she received the letter showing there was no coverage, she could "start issuing out payments on the initial care." *See* Def.'s Reply Br., Ex. 9 [Doc. No. 120-9].

Mr. Cunningham did not fax the letter after this conversation. Mr. Cunningham has testified that he realized the letter had previously been sent to Ms. Colvin and he decided not to fax it a second time.[9] However, Mr. Cunningham did not inform Ms. Nichols of this decision. Instead, on May 6, 2013, he contacted another attorney (Plaintiff's counsel in this

---

[9] Defendant points out that the exhaustion letter bore a different claim number. Based solely on this fact, Defendant states the letter was misfiled when it was received so Ms. Nichols was unaware of it. Defendant provides no record support for this factual assertion.

8

case) about a possible bad faith claim against Defendant; he provided a chronology of events regarding the med-pay claim and a copy of the peer review correspondence, and asked whether he should send the exhaustion letter again. *See* Def.'s Reply Br., Ex. 10 [Doc. No. 120-10], p.2.

Mr. Cunningham has also testified regarding his reasons for instructing Defendant to issue checks directly to him rather than to medical care providers. First, his representation of Plaintiff in the personal injury case required Mr. Cunningham to marshal all available funds for payment of medical providers, particularly those who had filed medical liens. Second, accumulating medical expenses was part of his litigation strategy for maximizing Plaintiff's recovery against the alleged tortfeasor. Plaintiff questioned Mr. Cunningham numerous times during the representation about unpaid medical bills, including by email on November 1, 2012. Mr. Cunningham advised Plaintiff not to pay outstanding medical bills and not to submit them to his health insurance carrier. Plaintiff testified that he followed this advice. Unfortunately, Plaintiff's debt to Oklahoma Radiology Group became delinquent in August 2012, was turned over to a collection agency in December 2012, and appeared on Plaintiff's credit report in February 2013.

This lawsuit was filed on August 7, 2013. Shortly thereafter, another adjuster, Dana Maness, reviewed Defendant's claim file and obtained authorization to pay Plaintiff the full amount of his med-pay benefit. Ms. Maness based this decision on Ms. Nichols' letter of May 3, 2013, which she understood to say that Plaintiff's medical treatment before 2012 was

9

related to the accident, and her review of his medical bills for 2011, which exceeded the amount of his med-pay benefit. Defendant's check in payment of Plaintiff's med-pay claim was delivered to his counsel in September 2013. In keeping with Mr. Cunningham's plan to marshal funds and not to distribute the med-pay benefit to medical providers, Defendant's check remained in a file and was not deposited into the law firm's account until April 2014, when the personal injury case was resolved and Mr. Cunningham was ready to negotiate with medical providers for reduced payments.

## Discussion

### A. Plaintiff's Proof of Bad Faith

Plaintiff claims Defendant failed to conduct a reasonable investigation of his insurance claim and delayed payment until his medical care providers had filed liens against him. Defendant contends Plaintiff cannot establish bad faith because it handled his med-pay claim in the manner requested by his attorney, conducted a reasonable investigation upon receiving Mr. Cunningham's instruction to proceed, and paid Plaintiff's claim in full upon determining there was no primary coverage – a fact which Mr. Cunningham had promised to confirm in his last communication before Plaintiff filed suit.

Under Oklahoma law, Defendant had an "'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)). When processing an insurance claim, "the insurer

10

must conduct an investigation reasonably appropriate under the circumstances." *See Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991); *accord Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). An insurer's duty "to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007) (emphasis omitted). The Oklahoma Supreme Court has summarized the law regarding a bad faith claim based on a delay in payment as follows:

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim.

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (2009) (footnotes omitted). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

Upon consideration of the summary judgment record in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material facts relative to the second and third elements of a bad faith claim precludes summary judgment on the issue of bad faith conduct. Regardless whether the Court would reach the same conclusions, Plaintiff has presented <u>minimally</u> sufficient facts from which reasonable jurors could find that Defendant

11

did not conduct an investigation and assessment of Plaintiff's med-pay claim that was appropriate under the circumstances.

On the record presented, reasonable minds could <u>not</u> differ on whether Defendant acted reasonably in initially waiting to process Plaintiff's med-pay claim until Mr. Cunningham provided copies of Plaintiff's medical bills and records and requested an evaluation of the claim. When Mr. Cunningham first gave notice of the claim in September 2011, he expressly directed Defendant not to process the claim, that is, not to issue any payments until requested by his firm. In the first follow-up contact in November 2011, Defendant was advised that Plaintiff's medical bills and records would be provided after treatment ended. Plaintiff's counsel provided the executed forms required by the policy in January 2012 (within one year after the accident), but did not provide any information regarding treatment providers or medical bills at that time. Thus, Plaintiff's argument that Defendant could have started its investigation right away, without waiting for Plaintiff to provide additional medical information, rings hollow.

In October 2012, Mr. Cunningham provided the promised copies of medical records and bills, and asked Defendant to evaluate Plaintiff's med-pay claim. Defendant has provided reasonable explanations for many of the multiple delays that occurred in processing the claim after that time. Reasonable minds could differ, however, regarding whether Defendant undertook a reasonable investigation and made a reasonably prompt determination of Plaintiff's entitlement to the med-pay limit of his policy after it was requested. By

Defendant's own account, Plaintiff's medical bills had exceeded that amount within the first year after the January 2011 accident. Thus, one might reasonably question Defendant's need for a medical opinion to determine whether additional medical treatment Plaintiff received in 2012 was related to the accident. Similarly, Defendant's explanation that it requested a second copy of the "exhaustion letter" because the first one had been misfiled and it expected Plaintiff to provide one, says nothing about why Defendant needed Plaintiff's attorney to supply information about Mr. Stout's policy that Defendant had provided to him in the first place.

For these reasons, the Court finds that Plaintiff has demonstrated a genuine dispute of material precluding summary judgment regarding bad faith conduct.

**B.      Plaintiff's Proof of Damages**

Defendant also contends Plaintiff's claim of delayed investigation and payment fails because his only alleged damages are emotional distress related to unpaid medical bills and a negative credit report, but these had nothing to do with his lack of payment from Defendant. As stated above, an essential element of Plaintiff's bad faith claim is proof that Defendant's "violation of its duty of good faith and fair dealing was the direct cause of [Plaintiff's] injury." *Ball*, 221 P.3d at 724.

On this point, Plaintiff has no effective response. He argues that if he had received Defendant's med-pay check in a timely manner, he might have been able to pay some of his medical bills, including the debt to Oklahoma Radiology Group before it appeared on his

13

credit report in February 2013.  *See* Pl's Resp. Br. [Doc. No. 116], p.26.  Plaintiff also argues that by the time Defendant's check was received, the medical liens had far exceeded the amount of his med-pay benefit.  But medical liens filed against Plaintiff exceeded $25,000 by August 2012, before Mr. Cunningham ever asked Defendant to pay the med-pay claim.  *See* Def.'s Mot. Summ. J., Ex. 16 [Doc. No. 62-16].  Plaintiff's only other evidence consists of speculative testimony by Mr. Cunningham that timely payment of the med-pay benefit might have affected negotiations regarding the settlement of Plaintiff's personal injury case.  *See* Cunningham Dep. 141:19-142:13.

Distilled to its essence, Plaintiff's alleged injury directly caused by Defendant's delay in paying his med-pay claim is his "emotional distress and frustration . . . based on what happened to Plaintiff's credit as a result of the medical liens and adverse credit reports as a result of the accident."  *See* Pl's Resp. Br. [Doc. No. 116], p.28.  Based on the undisputed facts shown by the summary judgment record, however, this injury was a result of Mr. Cunningham's strategy to accumulate unpaid medical expenses and liens, and Plaintiff's decision to follow Mr. Cunningham's advice not to pay a provider who later elected to assign the debt to a collection agency rather than filing a medical lien.  Defendant's timely payment of a med-pay benefit would not have saved Plaintiff from medical liens or adverse credit reports.  Nor does the record suggest that Mr. Cunningham would have used an earlier

$25,000 payment to satisfy any of Plaintiff's medical debts.[10]   The legal opinion of his firm is that "we can [not] make a unilateral determination regarding distribution of medpay funds that are insufficient to satisfy all medical liens.  We have a duty to marshal the funds until all sources of recovery are exhausted[,] then either pay the bills or interplead the funds." *See* Def.'s Reply Br., Ex. 14 [Doc. No. 120-14] (citations omitted).

In summary, Plaintiff presents no facts or evidence to suggest that Defendant's delay in paying his med-pay benefit had any causal effect on his emotional distress or frustration from unpaid medical bills and debts.  From the record presented, no reasonable finding could be made that a med-pay check tendered earlier would have been handled any differently than it actually was – placed in a file and held until the underlying negligence action was resolved. Finally, Plaintiff points to no facts or evidence suggesting that Defendant's delay caused him to suffer any other sort of emotional distress or mental anguish.

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding the damages element of his bad faith claim.  Therefore, Defendant is entitled to summary judgment on this claim.

## Conclusion

For the reasons set forth herein, the Court finds that Defendant is entitled to summary judgment on all claims asserted in the Complaint.

---

[10] Indeed, the med-pay check tendered by Defendant remained in an attorney's file – uncashed – from September 2013 until April 2014.

IT IS THEREFORE ORDERED that Defendant Allstate Fire and Casualty Insurance Company's Motion for Summary Judgment [Doc. No. 62] is GRANTED.  Judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of September, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE